JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| MABEL ARREDONDO<br><br>Plaintiff,<br><br>v.<br>**LOANDEPOT.COM, LLC** a Delaware Limited<br>Liability Company<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ **EP22CV0374** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.       The Plaintiff is MABEL ARREDONDO ("Plaintiff") a natural person, resident of the

Western District of Texas, and was present in Texas for all automated text messages, in This case

in El Paso County, Texas.

2.       Defendant LOANDEPOT.COM, LLC ("Defendant") is a limited liability company

organized and existing under the laws of Delaware with a principal address of at 26642 Towne

Center Drive, Foothill Ranch, California 92610 and can be served via registered agent

REGISTERED AGENTS SOLUTIONS, INC at Corporate Center One, 5301 Southwest Parkway,

Suite 400, Austin, Texas 78785.

### JURISDICTION AND VENUE

3.       Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053

1

because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarket in robocalls to Plaintiff; adds little complexity to the case

4.    Personal Jurisdiction.    This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls and automated text messages to Texas residents, derive revenue from Texas businesses, and they sell goods and services to Texas residents, including the Plaintiff.  Defendant offers mortgage loan services to Texas residents to finance property purchases located in Texas.

5.    Venue.  Venue is proper in This District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in This District and because the Plaintiff resides in This District.  Residing in the Western District of Texas when she received a substantial if not every single automated text message from Defendants that are the subject matter of this lawsuit.

6.    This Court has venue over the defendants because the automated text messages at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.    The TCPA makes it unlawful "to make any call (This than a call made for emergency

2

purposes or made with the prior express consent of the called party) using an automatic telephone

dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned

to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express consent

of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to

the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order"

of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of §

227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon

demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.     The TCPA provides a private cause of action to persons who receive calls in violation of §

227(c) or a regulation promulgated this under. 47 U.S.C. § 227(c)(5).

13.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming call whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the*

*Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     The FCC requires "prior express written consent" for all autodialed or prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017)
(codifying a June 26, 2003 FCC order).

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received This information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed This principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of this section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in

or personally authorized the conduct found to have violated the statute." (Internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

20.    In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

21.    One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

22.    An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

23.    The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

24.    Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call, they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

25.    Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit

extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

26.    A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

27.    Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

28.    At all times material hereto Plaintiff's number ending in 1821 was successfully registered on the Do-Not-Call Registry since May18, 2022.  Plaintiff never requested for the administrator to remove her number from the database. And at all time material to this complaint Plaintiff's number was successfully registered on the Do-Not-Call Registry.

29.    Plaintiff received at least eighteen (18) unauthorized automated text messages ("the text messages") to her personal cell phone ending in 1821 from July 26, 2022, to October 21, from Defendant LOAN DEPOT soliciting their goods and services.

30.    Defendant LOAN DEPOT is a company that markets and solicits "mortgage refinance" nationwide including in Texas.

31.    Defendant LOAN DEPOT does not have any prior existing business relationship with Plaintiff. Plaintiff has never been a customer or client of Defendant LOAN DEPOT.

32.    On July 26, 2022, at 9:14 AM Plaintiff received a text message from phone number 949-620-2227:

> "John, the feds are meeting today. We are running a last chance pricing special. basically, what we were charging back in May. There is no doubt today will be your best offer for the next 2 years. When can you be available?"

33.     On August 9, 2022, Plaintiff received another text message from the phone number 949-620-227 saying "Hello John this is Robbie from Loan Depot".

34.     Plaintiff conducted a Google search of the number 949-620-2227 and confirmed the company behind the text messages was LOAN DEPOT. *See Exhibit B.*

35.     On October 19, 2022, Plaintiff called phone number 949-620-2227 to confirm that the phone number belonged to a LoanDepot representative.  The phone call went straight to a voicemail stating "Good day.  Thank you for calling LoanDepot.  You have reached the office of Robbie Glowczski."

36.     On October 19, 2022, Plaintiff replied to the text messages saying "Hi. Where can I get an application?"  Plaintiff received the following response: "You can start the application online: apply.loandepot.com/fglowczwski."

37.     Plaintiff did not give Defendant her prior express written consent to receive the text messages.

38.     Plaintiff did not have a prior existing business relationship with Defendant.  Plaintiff does not have any accounts or mortgages with Defendant.

39.     Plaintiff never made any inquiries with LoanDepot and never initiated any contact Defendant for any purpose.

40.     The text messages Plaintiff received from Defendant have caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition, to wear and tear on her phone, interference with the use of her phone, and consumption of battery life.

41.     Defendant LOAN DEPOT knowingly and willfully authorizes the sending of text messages to millions of consumers' personal cell phones *en masse* soliciting their services to carriers.

42.    Table below displays the automated text messages made to Plaintiff by Defendants:

| Number | Date | Time | Caller ID | Notes |
|--------|------|------|-----------|-------|
| 1. | 07/26/22 | 9:14 am | 949-620-2227 | Unsolicited text message |
| 2. | 07/27/22 | 9:08 am | 949-620-2227 | Unsolicited text message |
| 3. | 07/27/22 | 1:25 pm | 949-620-2227 | Unsolicited text message |
| 4. | 07/29/22 | 9:45 am | 949-620-2227 | Unsolicited text message |
| 5. | 08/1/22 | 10:47 am | 949-620-2227 | Unsolicited text message |
| 6. | 08/09/22 | 10:03 am | 949-620-2227 | Unsolicited text message |
| 7. | 08/16/22 | 11:01 am | 949-620-2227 | Unsolicited text message |
| 8. | 08/23/22 | 12:10 pm | 949-620-2227 | Unsolicited text message |
| 9. | 08/24/22 | 1:17 pm | 949-620-2227 | Unsolicited text message |
| 10. | 08/29/22 | 11:56 am | 949-620-2227 | Unsolicited text message |
| 11. | 08/30/22 | 9:39 am | 949-620-2227 | Unsolicited text message |

| 12. | 09/01/22 | 3:19 pm | 949-620-2227 | Unsolicited text message |
|-----|----------|---------|--------------|--------------------------|
| 13. | 09/02/22 | 9:54 am | 949-620-2227 | Unsolicited text message |
| 14. | 09/08/22 | 11:29 am | 949-620-2227 | Unsolicited text message |
| 15. | 09/21/22 | 9:18 am | 949-620-2227 | Unsolicited text message |
| 16. | 09/26/22 | 11:23 am | 949-620-2227 | Unsolicited text message |
| 17. | 10/06/2022 | 12:24 pm | 949-620-2227 | Unsolicited text message |
| 18. | 10/21/2022 | 8:35 AM | 949-620-2227 | Unsolicited text message |

43.     The text messages Plaintiff received from Defendants were placed while knowingly ignoring the national do-not-call registry. The text messages were placed without training their agents/employees on the use of an internal do-not-call policy.

44.     Defendant has been sued at least 20 times for continued violations of the TCPA. Defendant continues to knowingly and willfully make unsolicited phone calls and text messages because it benefits them financially.

45.     Plaintiff sent Defendant LOAN DEPOT requesting an internal do not call policy on October 6, 2022, to customercare@loandepot.com and privacy@loandepot.com which is an email listed on the website they own and control https://www.loandepot.com.

46.     Defendant LOAN DEPOT failed and/or refused to send Plaintiff a copy of any internal do not call policy.

47.     On information and belief, Defendant LOAN DEPOT did not have a written do-not-call policy while they were sending the text messages.

48.     No emergency necessitated none of the alleged illegal automated text messages.

49.     Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

50.     Defendant LOAN DEPOT' automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

51.     Defendant LOAN DEPOT' automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

52.     Defendant LOAN DEPOT' automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

53.     Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

## Plaintiff's cell phone is a residential number

54.     The text messages were to Plaintiff's cellular phone ending in 1821 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her

personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code 305.053**

55.     The actions of Defendant LOAN DEPOT violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendant LOAN DEPOT violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3).

## COUNT ONE:
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

56.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57.     The foregoing acts and omissions of Defendant LOAN DEPOT and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

58.     Defendant LOAN DEPOT sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

59.     Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the automated text messages described above, in the amount of $500 per automated text message.

11

60.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.

47 U.S.C. § 227(c)(5)(B).

61.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful

violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT TWO:**

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

62.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.     The foregoing acts and omissions of Defendant LOAN DEPOT and/or their affiliates or

agents constitute multiple violations of FCC regulations by making telemarketing solicitations

despite lacking the following:

    a.   A written policy, available upon demand, for maintaining a do-not-call list, in

        violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b.   Training for the individuals involved in the telemarketing on the existence of and

        use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c.   In the solicitations, the name of the individual caller and the name of the person or

        entity on whose behalf the call is being made, in violation of 47 C.F.R. §

        64.1200(d)(4).[4]

64.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47

U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

65.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT THREE

### Violations of The Texas Business and Commerce Code 305.053

66.     Plaintiff incorporates the foregoing allegations as if set forth herein.

67.     The foregoing acts and omissions of Defendant LOAN DEPOT and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Plaintiff's cellular telephone number without her prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under This subsection.

68.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

69.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mabel Arredondo prays for judgment against the defendant jointly and severally as follows:

A.     Leave to amend This Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for 17 text messages.

E.      An award of $1500 per text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for 17 text messages.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G.      An award to Ms. Arredondo of damages, as allowed by law under the TCPA;

H.      An award to Ms. Arredondo of interest, costs, and attorneys' fees, as allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

October 21, 2022

Respectfully submitted,

*Mabel Arredondo*

Mabel Arredondo
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
(915) 999-8219
Mabel.arredondo22@gmail.com

## ⌂ Zillow®

Sign in

Mortgage lenders          Mortgage rates          Mortgage calculator          Lender directory



loanDepot 🏠

# Robbie Glowczwski

Licensed Lending Officer     NMLS# 2113936

★ ★ ★ ★ ★  5.00

5 Reviews (2 Recent | 0 Verified)

Message Robbie

# About Robbie

Supporting clients in reaching their financial goals through homeownership. My approach is different; I take a consultative approach to understand the goals each of my clients have--investors, first-time homebuyers or long-time homeowners, all of my clients benefit from white-glove service.

**Show More**

# Robbie's Reviews ★ ★ ★ ★ ★

Write a review

5 Stars · 5 Reviews

★ ★ ★ ★ ★

7/31/2022 🚩

## Amazing transaction

Ari Smith from Lexington, KY

Robbie was great and very helpful throughout this process! Made it all very easy! He was available whenever we needed him and made the transaction very quick and easy. Will recommend him to anyone in need.

| **Loan Status** | Closed Jul 2022 | **Interest Rate** | As expected | **Close on time** | Yes |
|---|---|---|---|---|---|

https://www.zillow.com/lender-profile/rglow/

| | | **Fees/Closing costs** | Lower than expected |
|---|---|---|---|
| **Loan Type** | Refinance | | |

**FIRST-TIME HOME BUYER**     **LOW CREDIT SCORE**

★ ★ ★ ★ ★                                                                7/14/2022 🏳

## Review of my experience with Robbie Glowczwski

Rosalind Loftin from Dana Point, CA

Robbie was extremely knowledgeable and very kind and patient. Whenever I had a question and I texted him, he would respond quickly. He explained everything I didn't understand and handled my loan very professionally and on time. I had no issues whatsoever and it was a pleasure working with Robbie. ...
Read more

| **Loan Status** | Closed Feb 2022 | **Interest Rate** | As expected | **Close on time** | Yes |
|---|---|---|---|---|---|

| **Loan Type** | Home equity | **Fees/Closing costs** | As expected |
|---|---|---|---|

★ ★ ★ ★ ★                                                                7/2/2022 🏳

## Awesome Experience

tlburton11 from Winston-Salem, NC

If you want a smoove and streamline process, i recommend Robert. He was on target with every aspect of the process. There were no surprise he wasn't prepare for, and he kept me informed though out the process.

| **Loan Status** | Closed Jun 2022 | **Interest Rate** | Lower than expected | **Close on time** | Yes |
|---|---|---|---|---|---|
| | | | | **Fees/Closing costs** | Lower than expected |
| **Loan Type** | Refinance | | | | |

**30 YEAR FIXED**     **FHA LOAN**     **LOW CREDIT SCORE**     **SELF EMPLOYED**

**loanDepot** Hello! We are happy to hear that Team loanDepot was able to exceed your expectations. We take being your lender of choice very seriously 🏳 and look forward to working with you again in the future.

 5/13/2022 🏳

## Loan depot

johnpayne17 from Holiday, FL

First of all my experience was flawless.Robert Glowczwski,was unbeliveable.His attention to ever aspect of our loan was perfect,from start to finish.His kindness & professionalism were beyond any expecations we had ever experienced with anyone. His attention to detail on every aspect of the loan from start to finish was flawless, ... Read more

**Loan Status**  Closed Apr 2022 **Interest Rate**  As expected **Close on time**  Yes

**Loan Type**  Refinance                                          **Fees/Closing costs**  As expected

**30 YEAR FIXED**     **CONVENTIONAL LOAN**

 3/18/2022 🏴

## Fast and Efficient

zuser201707181504216 from Oceanside, CA

Robbie was great from the onset of the application and set lofty expectations that were completely met by the overall experience. Simple refinance process closed within 30 days with minimal hassle. Robbie and his team communicated clearly and quickly all required items. Great experience!

**Loan Status**  Closed Feb 2022 **Interest Rate**  As expected **Close on time**  Yes

**Loan Type**  Refinance                                          **Fees/Closing costs**  As expected

**30 YEAR FIXED**     **CONVENTIONAL LOAN**

> **loanDepot** Hello! Thank you for sharing the positive experience you had with loanDepot. Customer satisfaction is our priority and your feedback is greatly  appreciated.

Any and all information appearing on a lender's profile is submitted and updated by the individual lender. Zillow Group Marketplace, Inc. does not verify, nor does it monitor, lender profile information. Lender profile information does not reflect Zillow Group Marketplace, Inc.'s views or opinions.

In order to provide the most comprehensive lender reviews, we compile reviews from customers across Zillow Group's brands. The reviews published here may have originated from any of those brands, including Zillow and Trulia.

NMLS ID and license/registration information provided through NMLS B2B Access by agreement with State Regulatory Registry, LLC. Any use of this information that violates the NMLS B2B Access Terms of Use is strictly prohibited. For additional information, see http://www.nmlsconsumeraccess.org/

## Address
26642 Towne Centre Drive
Foothill Ranch, CA92610

## Office
(949) 620-2227

## Cell
(949) 395-7442

## Fax
(833) 635-1989

## Website
http://apply.loandepot.com/rglowczwski

About    Zestimates    Research    Careers    Help    Advertise    Fair Housing Guide    Terms of use

Privacy Portal    Cookie Preference    Blog    AI    Mobile Apps

Trulia    StreetEasy    HotPads    Out East    ShowingTime

Do Not Sell My Personal Information→

Zillow Group is committed to ensuring digital accessibility for individuals with disabilities. We are continuously working to improve the accessibility of our web experience for everyone, and we welcome feedback and accommodation requests. If you wish to report an issue or seek an accommodation, please let us know.

Zillow, Inc. holds real estate brokerage licenses in multiple states. Zillow (Canada), Inc. holds real estate brokerage licenses in multiple provinces. A list of our real estate licenses is available here.
§ 442-H New York Standard Operating Procedures
§ New York Fair Housing Notice
TREC: Information about brokerage services Consumer protection notice
California DRE #1522444

10/4/22, 11:35 AM

https://www.zillow.com/lender-profile/rglow/

## Contact Zillow, Inc. Brokerage

For listings in Canada, the trademarks REALTOR®, REALTORS®, and the REALTOR® logo are controlled by The Canadian Real Estate Association (CREA) and identify real estate professionals who are members of CREA. The trademarks MLS®, Multiple Listing Service® and the associated logos are owned by CREA and identify the quality of services provided by real estate professionals who are members of CREA. Used under license.

 



